**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

                Respondent,

v.

TYSON SCHULTZ,

                Appellant.

No. 79153-2-I

DIVISION ONE

UNPUBLISHED OPINION

LEACH, J. — Tyson Schultz appeals an order correcting his judgment and sentence and an order permitting the filing of an amended information. He claims the trial court should have resentenced him to a crime charged in the information but not the crime to which he pleaded guilty or for which he was convicted. He bases this claim on a mutual mistake the parties made when they entered into a plea agreement, when Schultz pleaded guilty, and when the court sentenced him.

Schultz's remedy for this mutual mistake is specific performance or withdrawal of the plea agreement. Because he did not want to withdraw his guilty plea, CrR 7.8(a) authorized the trial court to correct a clerical error in the record by allowing the State to file an amended information to charge the crime the parties thought the original information charged and Schultz knowingly pleaded guilty to and for which the trial court sentenced him. CrR 7.8(a) also authorized the trial court to amend the judgment and sentence. We affirm.

BACKGROUND

Tyson Schultz and A.J. were in an intimate dating relationship and had a child together. After A.J. asserted that Schultz cyberstalked her via Facebook Messenger, the cell phone application "Pinger," and texts to her cell phones, the State charged Schultz with one count of felony harassment domestic violence, one count of felony cyberstalking, and two counts of domestic violence felony violation of a court order. The information did not allege domestic violence as part of the charge of cyberstalking.

In May 2016, Schultz entered into a written plea agreement. The statement of defendant to which Schultz signed as part of this agreement states that he is charged in one count with "Cyberstalking DV" and the elements of the crime were set forth in the information. Schultz agreed that the standard range for the crime was 51 to 60 months confinement and that the prosecutor would recommend 51 months. Schultz included the following statement in the plea agreement:

> During a period of time between October 1, 2015 and July 19, 2016, I did, with the intent to harass, make electronic communications with [A.J.], the mother of my child, repeatedly, using obscene words and threats of injury to her after having previously been convicted of Assault in the Fourth Degree-Domestic Violence, a crime of harassment as defined in RCW 9A.46.060. These communications were received by [A.J.] in King County, Washington.

On the felony plea agreement, Schultz pleaded guilty to count two of the information. He agreed that his offender score was 10 and agreed to the recommended sentence of 51 months. Schultz also agreed the sentencing guidelines scoring form, the offender score, and the prosecutor's understanding

of defendant's criminal history, attached to the felony plea agreement, were "accurate and complete."

According to the plea agreement "if the parties are mistaken as to the offender score on any count, neither party is bound by any term of th[e] agreement." The plea agreement also stated, "The defendant agrees that any attempt to withdraw [his] guilty plea(s), or any attempt to appeal or collaterally attack any conviction or agreed sentence under this cause number or any cause number that is part of this indivisible agreement will constitute a breach of this agreement."

The State attached the domestic violence and non-violent felony offense scoring form to the plea agreement. Using the form's standard range calculation, Schultz's cyberstalking score identified the "number of adult DV doublers" under RCW 9.94A.525(21)(a) as one; Schultz's "number of scored DV misdemeanors" under RCW 9.94A.525(21)(c) as five; and Schultz's "other felony convictions" score as three. So, according to the form, his offender score was 10 and the standard range was 51 to 60 months. The prosecutor's understanding of his criminal history, also attached to the plea agreement, assigned points to the following prior offenses:

- Two points for one count of felony violation of protective order domestic violence (2016).

- One point each for three counts of misdemeanor violations of a protective order domestic violence (2015).

3

- One point for a misdemeanor violation of a protective order domestic violence (2014).

- One point for assault four domestic violence (2013).

- One point for one count of felony assault two not domestic violence (2009).

- One point for one count of residential burglary (2009).

- One point for one count of possession of a controlled substance (2006).

The parties agreed to a joint sentence recommendation of 51 months confinement. The State agreed to dismiss the charges of felony harassment domestic violence, one count of felony cyberstalking, and two counts of domestic violence felony violation of a court order.

During the hearing on the plea agreement, Schultz said that he understood that he was pleading guilty to felony cyberstalking domestic violence. He also affirmed that he understood the elements the State needed to prove beyond a reasonable doubt. He said "yes" when asked whether he understood that he was "giving up [his] right to appeal a determination of guilt." He said he understood that the parties' understanding was that the standard range for him with his criminal history and the offense was 51 to 60 months. He adopted the statement on the form as his own statement and agreed it was true and correct.

The court accepted Schultz's plea as knowingly, voluntarily, and intelligently made. And it found that there was "an adequate factual basis to support the plea." It found him guilty of cyberstalking domestic violence.

The court sentenced Schultz on June 16, 2017. At the sentencing hearing, defense counsel agreed that Schultz's offender score was 10 and the standard range was 51 to 60 months. Counsel also agreed that the recommendation of 51 months in confinement was appropriate.

The trial court entered a judgment and sentence convicting Schultz of domestic violence felony cyberstalking. It dismissed the other three counts alleged in the information. The trial court found that "[d]omestic violence as defined by RCW 10.99.020 was pled and proved."[1] It included the same convictions in calculating Schultz's offender score as identified by the State in its understanding of his criminal history. It sentenced Schultz to 51 months of confinement.

On May 29, 2018, Schultz filed a motion to correct his judgment and sentence. He claimed, because the State failed to allege domestic violence in count two of the information charging him with cyberstalking-felony, the court should not have included misdemeanor domestic violence offenses in its calculation of his offender score. And, as a result, he was entitled to have a much less lengthy sentence imposed.

The State responded that the documents related to Schultz's plea agreement, read together, made it clear "that it was the parties' intent and agreement that the defendant plead guilty to Cyberstalking, Domestic Violence, that his prior domestic violence misdemeanors should count toward his offender

---

[1] The trial court did not fill in to whom the count of domestic violence designation applied.

5

score of 10 and that the parties were agreeing to a low end sentence of 51 months."

The State asserted Schultz could either ask for specific performance of his plea agreement, which he received, or he could withdraw his plea. Schultz expressly rejected the choice of withdrawing his plea. So, the State asked the court to allow it to file an amended information that included a designation of domestic violence with the cyberstalking charge. It also asked the court to amend the judgment and sentence to reflect the domestic violence designation. It claimed that the failure to include domestic violence along with the cyberstalking charge was a scrivener's error resulting from the way the State's computer system generated the information.

The court declined to resentence Schultz. The trial court granted the State's motion and entered an amended information and corrected judgment and sentence to add the domestic violence designation to cyberstalking.

Schultz appeals.

ANALYSIS

This case presents the intersection between a defendant's remedy for a conviction for an offense not charged, and his remedy for a plea based on a mutual mistake. Schultz claims that when a mutual mistake produces an agreement to plead guilty to a crime not charged and a resulting conviction, the remedy is to provide him with all of the agreement's benefits but to require the court to impose a lesser sentence for a lesser crime than contemplated by the agreement. We disagree.

A defendant convicted of a crime not charged has the right to reversal of the judgment and sentence.[2] But, Schultz did not ask for and does not want this relief, because the judgment and sentence dismissed three counts of the information charging him with three additional felonies. Because Schultz has not requested this relief, it would deprive both parties of the benefits of their plea agreement. The trial court's actions remedied the issue, so we do not reverse the judgment and sentence.

When a defendant's plea agreement is based on a mutual mistake, the Washington Supreme Court has identified two remedies available to the defendant: specific enforcement of the plea agreement or withdrawal of the guilty plea.[3] It has not identified any third remedy. Schultz has stated that he does not wish to withdraw his plea. The record suggests good reasons why. He would face the four felonies charged in the original information and possible amendments charging more serious or additional crimes.

So, Schultz asks for a remedy that no court appears to have provided.[4] He cites no case law suggesting that this remedy is within the court's authority. He offers no reason why it would be fair or appropriate. He admits that his plea was knowing. He does not identify any injustice inflicted on him. He makes no claim that he was denied due process. He makes no claim that the facts do not support his conviction. He fails to persuade us that the trial court should have resentenced him.

---

[2] State v. Olds, 39 Wn.2d 258, 261, 235 P.2d 165 (1951).
[3] State v. Walsh, 143 Wn.2d 1, 8-9, 17 P.3d 591 (2001).
[4] DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Schultz also challenges the trial court's decision to allow the State to file an amended information after he was sentenced and the amendment of the judgment and sentence. We review these decisions by the trial court for abuse of discretion.[5] The trial court authorized the filing of an amended information and amended the judgment and sentence under CrR 7.8(a), which states:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an appellate court and thereafter may be corrected pursuant to RAP 7.2(e).

A clerical mistake is one that, when amended, correctly conveys the intention of the court based on other evidence.[6] For example, a court may amend a judgment to include correct language that did not correctly convey the court's intention or "supplies language that was inadvertently omitted from the original judgment."[7] If the mistake is not clerical in nature, it is judicial, and the trial court cannot amend the judgment and sentence.[8]

Count two of the information stated:

Cyberstalking – Felony

> That the defendant TYSON JOSIAH SCHULTZ in King County, Washington, between October 1, 2015 and July 19, 2016, with intent to harass, intimidate, or torment another person, did make an electronic communication to [A.J.], anonymously or repeatedly, whether or not conversation occurred and threatening to inflict injury on the person or property of [INSERT] [sic], or any

---

[5] State v. Haner, 95 Wn.2d 858, 864, 631 P.2d 381 (1981).

[6] State v. Priest, 100 Wn. App. 451, 456, 997 P.2d 452 (2000).

[7] Presidential Estates v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

[8] Presidential Estates, 129 Wn.2d at 326.

member of his/her family or household; and the defendant had previously been convicted of Assault in the Fourth Degree-Somestic [sic] Violence, a crime of harassment as defined in RCW 9A.46.060, with [A.J.]; and that the threats communicated included the threat to kill;

Contrary to RCW 9.61.260(1),(3), and against the peace and dignity of the State of Washington.

The information identified count two as cyberstalking, without the domestic violence designation. Schultz's statement on plea of guilty stated that he was charged with the crime of "Cyberstalking DV" and referred to the "information" for the elements of the crime." In open court, Schultz pleaded guilty to "Cyberstalking DV." In his statement and in the felony plea agreement, he agreed to the offender score based on his prior convictions for crimes involving domestic violence as identified in the State's offender scoring form. In his statement and at the hearing, he agreed the standard sentencing range was 51 to 60 months. The parties agreed to jointly recommend 51 months confinement.

The documents and proceedings related to the plea agreement support only one reasonable conclusion. The parties failed to notice that the information did not designate the charge of cyberstalking as one of domestic violence. Schultz points to no evidence to the contrary. He does not challenge the prosecutor's assertion that this omission was a word processing or computer error.

CrR 7.8(a) authorizes the court to correct mistakes in the record with no time limit. Here, all of the parties believed the information included the designation of domestic violence on the charge of cyberstalking. Because the information is part of the record, and because the error was one that "when

amended would correctly convey the intention of the court based on other evidence,"[9] the trial court did not err in allowing the filing of an amended information or amending the judgment and sentence.

## CONCLUSION

We affirm. The record shows that Schultz does not want the court to reverse his original judgment and sentence and allow him to withdraw his guilty plea. His only other available remedy is specific enforcement of his plea agreement, which he has received. CrR 7.8(a) allows a trial court to correct the scrivener's clerical error upon which Schultz has relied for his requested relief.

_Leach, J._

WE CONCUR:

---

[9] State v. Priest, 100 Wn. App. 451, 456, 997 P.2d 452 (2000).